<table>
<tr><td colspan="3" align="center">Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL</td></tr>
<tr><td>JOSÉ CONFESOR AVILÉS BURGOS<br><br>Recurrente<br><br>V.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrida</td><td>KLRA202500194</td><td>Revisión procedente de la Junta de Libertad Bajo Palabra<br><br>Caso Núm.: 139957<br><br>Querella Núm.: 24-070<br><br>Sobre: Revocación de libertad bajo palabra</td></tr>
</table>

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero, el Juez Campos Pérez y el Juez Sánchez Báez.

Marrero Guerrero, Juez Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 25 de junio de 2025.

Comparece ante nos el señor José Confesor Avilés Burgos (señor Avilés Burgos o recurrente) y solicita que revisemos una *Resolución* emitida el 22 de enero de 2025 por la Junta de Libertad Bajo Palabra (JLBP o recurrida)[1]. En virtud del referido dictamen, el Foro Administrativo declaró No Ha Lugar a la solicitud del señor Avilés Burgos de continuar con el privilegio de libertad bajo palabra, tras resolver que infringió las Condiciones nueve (9) y doce (12) del *Mandato de Libertad Bajo Palabra.* Ante ello, la JLBP revocó el privilegio de libertad bajo palabra que el recurrente disfrutaba y ordenó su custodia legal al Departamento de Corrección y Rehabilitación (DCR).

Por los fundamentos que expondremos a continuación, se adelanta la confirmación de la *Resolución* recurrida.

### I.

Del expediente ante nuestra consideración surgió que el señor Avilés Burgos se encontraba cumpliendo una sentencia de cincuenta y cuatro (54) años por los delitos de asesinato en segundo grado,

---

[1] Apéndice del *Recurso de Revisión*, Anejo 1, págs 1-6. Notificada el 28 de enero de 2025.

tentativa de asesinato, conspiración y varias infracciones a la *Ley de Armas de Puerto Rico de 2020*, Ley 168-2019, 32 LPRA sec. 461 *et seq.* Desde el 10 de febrero de 2020, el recurrente se benefició de la libertad bajo palabra con supervisión electrónica. Empero, el 6 de agosto de 2024, la Policía de Puerto Rico realizó un allanamiento en la residencia del señor Avilés Burgos y encontró un arma de fuego y ciento diecinueve (119) municiones, sin poseer una licencia de armas.

Ante ello, el 7 de agosto de 2024, el Pueblo de Puerto Rico presentó dos (2) denuncias contra el señor Avilés Burgos por violación a los Artículos 6.08 y 6.22 de la *Ley de Armas, supra,* secs. 466g y 466u.[2] En igual fecha, en la Sala Municipal del TPI se encontró causa probable para arrestar por los delitos imputados.

Al próximo día, el Programa de Comunidad del DCR presentó un *Informe de Violación de Condiciones.*[3] En este, se informó sobre el auto de prisión provisional por las infracciones de la *Ley de Armas, supra,* antes mencionadas. Enfatizó que, con la conducta presentada por el recurrente, mostró un total menosprecio al privilegio otorgado por la JLBP y desconsideración con las orientaciones otorgadas por su técnico de servicio sociopenal y los miembros de la JLBP. Ello, al entender que cometió los mismos delitos por los que fue sentenciado.

El 9 de agosto de 2024, la JLBP ordenó el arresto del señor Avilés Burgos, su ingreso a una institución penal y la formulación de cargos por violación a las Condiciones nueve (9) y doce (12) del *Mandato de Libertad Bajo Palabra.*[4]

Posteriormente, el 18 de septiembre de 2024, se celebró una vista preliminar, en la que se determinó no causa para juicio contra el recurrente por los cargos imputados. Igualmente, el 26 de

---

[2] *Íd.,* Anejo 4, págs 12-17.
[3] *Íd.,* Anejo 5, págs 18-26.
[4] *Íd.,* Anejo 6, págs 27-30.

noviembre de 2024, se celebró una vista preliminar en alzada, mediante la cual tampoco se encontró causa para juicio.[5]

Como parte del proceso administrativo, el 3 de diciembre de 2024, una oficial examinadora de la JLBP celebró una Vista Final de Revocación de Libertad Bajo Palabra.[6] En esta, el representante legal del señor Avilés Burgos solicitó su excarcelación, petición a la que el técnico de servicio sociopenal se allanó en la medida que continuara cumpliendo a cabalidad con las condiciones de la JLBP.

Eventualmente, el 22 de enero de 2025, la JLBP emitió una *Resolución*, en la que determinó revocar el privilegio de libertad bajo palabra al señor Avilés Burgos por violación a las Condiciones nueve (9) y doce (12) del *Mandato de Libertad Bajo Palabra* mientras disfrutaba del privilegio de libertad bajo palabra.[7] La recurrida formuló las siguientes determinaciones de hechos:

1) Al querellado le fue notificado dos (2) cargos por violación a las condiciones 9 y 12 del *Mandato de [L]ibertad [B]ajo [P]alabra.*

| Cargo Núm. 1 | Condición Núm. 9 | Observará buena conducta en la comunidad. Se abstendrá de cometer hechos o incurrir en omisiones que constituyen delitos de acuerdo con las leyes de Puerto Rico, las leyes de los Estados Unidos y Ordenanzas Municipales y cumplirá con las leyes del Estado y con los decretos administrativos de las agencias del gobierno. Surge del informe de violación de condiciones, recibido el 8 de agosto de 2024, preparado por el Técnico de Servicios Sociopenales (tss) encargado del caso[,] Raúl Reyes Font, del Programa de Comunidad Ponce del Departamento de Corrección y Rehabilitación (DCR), informando el 6 de agosto de 2024, al querellado le realizaron un allanamiento en su residencia y hallaron que el querellado poseía un arma de fuego (rifle) y municiones. Por este hecho[,] el querellado cuenta con un Auto Provisional por cargos en violación al Art. 6.06 y Art. 6.22 de la Ley 168 (Ley de Armas), casos (PO2024CR1376-1) Y (PO2024CR01376-2), con fianza de $10,000 en cada caso. El 7 de agosto de 2024, fue |
| --- | --- | --- |

---

[5] *Íd.*, Anejo 7, págs 31-33.
[6] Transcripción de la regrabación de la vista final del 3 de diciembre de 2024, págs. 3-8.
[7] Apéndice del *Recurso de Revisión*, Anejo 1, págs 1-6. Notificada el 28 de enero de 2025.

| | | |
|---|---|---|
| | | ingresado en la Institución Correccional Ponce (676). |
| | | Con esta conducta demuestra un menos precio al privilegio otorgado de Libertad Bajo Palabra y falta de compromiso con el proceso de rehabilitación en crasa violación del mandato establecido entre él y la Junta de Libertad Bajo Palabra. |
| Cargo Núm. | Condición Núm. 12 | La Junta podrá decretar la suspensión indefinida de su libertad bajo palabra en la comunidad y ordenar su reingreso en cualquier institución apropiada del gobierno cuando, a juicio de la junta, la Libertad Bajo Palabra en su caso fuere incompatible con el bienestar público, con su propio bienestar o con el bienestar de sus familiares o con personas con quien usted conviviere. |
| | | Surge del informa de violación de condiciones, recibido el 8 de agosto de 2024, preparado por el Técnico de Servicios Sociopenal (tss) encargado del caso[,] Raúl Reyes Font, del Programa de Comunidad Ponce del [...] (DCR), informando que el 6 de agosto de 2024, al querellado le realizaron un allanamiento en su residencia y hallaron un arma de fuego (rifle) y municiones. Cuenta con fecha de antelación al juicio el 13 de agosto de 2024 y vista preliminar el 20 de agosto de 2024. |
| | | Por este hecho[,] el querellado cuenta con un Auto Provisional por cargos en violación al Art. 6.06 y Art. 6.22 de la Ley 168 (Ley de Armas), casos (PO2024CR1376-1) Y (PO2024CR01376-2), con fianza de $10,000 en cada caso. El 7 de agosto de 2024, fue ingresado en la Institución Correccional Ponce (676). |
| | | Todos los hechos expuestos demuestran la falta de controles y compromiso del querellado, que han culminado en un nuevo proceso legal de carácter penal contra el querellado y por tanto en violación crasa a lo establecido en su mandato de libertad bajo palabra. |
| | | No muestra aprecio por la libertad ni por las oportunidades que se le han brindado por su mejoramiento personal y modificación de actitudes hacia la conducta, delinquiendo en los mismos delitos por los cuales fue sentenciado por el Tribunal de la Ley de Armas. |

2) Las condiciones antes indicadas son parte del *Mandato de Libertad Bajo Palabra.* El querellado firmó el *Mandato de Libertad Bajo Palabra,* expedido a su favor el 10 de febrero de 2020, y cumple una sentencia de 54 años por los delitos de [a]sesinato en [s]egundo [g]rado (3 casos), [t]entativa de [a]sesinato (1 caso), [c]onspiración e [i]nfracción a los Artículos 6 A y 8 (2 casos) de la Ley de Armas. Finaliza, tentativamente, la sentencia el 26 de mayo de 2032.

3) El 9 de agosto de 2024, la Junta emite una Orden de Arresto en contra del querellado por probable violación a las condiciones que anteceden. Este ingresó el 7 de agosto de 2024 por nuevos delitos y, por ende, fue citado para vista sumaria inicial ante la Junta, celebrándose el 19 de

agosto de 2024. Ese día, el querellado solicitó la consolidación de la vista siendo citado a vista final el 17 de septiembre de 2024.

4) Los días 17 de septiembre, 24, de octubre y 7 de noviembre de 2024, se suspendieron las vistas a solicitud del representante legal y, además, se renunció a los términos que le pudieron beneficiar al querellado debido a que se estaba esperando por la decisión del Tribunal en los nuevos casos que el querellado tenía pendiente.

5) El TSS declaró que al querellado le radicaron cargos por violación a la Ley 168 en su Artículo 6.06 (grave) y 6.22 (grave) de la Ley de Armas. Se impuso por parte del Tribunal una fianza de $10,000 en cada caso. El 7 de agosto de 2024[,] el querellado fue ingresado en la Institución Correccional 676 en Ponce. La denuncia radicada contra el querellado indicaba que el 6 de agosto de 2024, le fue realizado un allanamiento en su residencia y encontraron un arma de fuego (rifle) y municiones.

6) El 18 de septiembre de 2024[,] el Tribunal determinó no causa en la vista preliminar. Inconforme con esa determinación, la Fiscalía fue en alzada el 26 de noviembre de 2024, pero el Tribunal encontró, nuevamente no causa para juicio.

7) El representante legal arguyó que[,] tomando en consideración que el Tribunal determinó no causa, y ambas imputaciones están relacionadas entre sí, solicitó una oportunidad a su representado para que continúe cumpliendo la sentencia bajo el privilegio de libertad bajo palabra. Expresó que su representado se encontraba realizando buenos ajustes y cumplía con las condiciones de su Mandato.

8) El TSS no tiene objeción a que se conceda una oportunidad al querellado para [que] continúe cumpliendo la sentencia bajo el mencionado privilegio. Expresa el TSS que el querellado cumplía con las demás condiciones de su Mandato. Además, cuenta con una vivienda donde residir y apoyo familiar. [...]

La JLBP concluyó que la conducta antijurídica del señor Avilés Burgos no respondía a las buenas conductas en la comunidad que debía observar, constituían retrocesos y demostraba poco compromiso en su proceso de rehabilitación. A su vez, indicó que el recurrente no controvirtió los hechos consignados por el técnico de servicio sociopenal en el Informe. La recurrida concibió que estos hechos no se podían considerar aislados, toda vez que el señor Avilés Burgos cumplía una sentencia por infringir la *Ley de Armas, supra.* La JLBP expuso que el hecho de que el TPI determinó no causa no significó que el organismo administrativo debía desestimar las imputaciones que se presentaron en contra del recurrente, ya que ni la absolución penal confiere inmunidad en el campo disciplinario administrativo que requieren un grado diferente de prueba.

Inconforme con la determinación, el 18 de febrero de 2025, el señor Avilés Burgos presentó una *Moción en Solicitud de Reconsideración*.[8] En su escrito, argumentó que tanto en la vista preliminar como en la vista preliminar en alzada no se le vinculó ni se le pudo establecer probabilidad de la comisión de la actividad delictiva que se le imputó ni con la fecha, lugar y hora. Según el recurrente, en la vista preliminar se demostró que en su residencia jamás se ocupó evidencia delictiva alguna. Además, expresó que el técnico de servicio sociopenal no se opuso a la continuación del beneficio de libertad bajo palabra.

Tras examinar la referida solicitud de reconsideración, el 27 de febrero de 2025, la JLBP determinó No Ha Lugar.[9]

Aún insatisfecho con el dictamen administrativo, el 31 de marzo de 2025, el señor Avilés Burgos presentó una revisión administrativa, en la que señaló que la JLBP cometió los siguientes errores:

> **PRIMER ERROR:** ERRÓ LA JLBP AL REVOCAR EL PRIVILEGIO DE LIBERTAD BAJO PALABRA CONCEDIDO AL LIBERADO JOS[É] CONFESOR AVIL[É]S BURGOS, AUN CUANDO SU T[É]CNICO SOCIO PENAL RECOMEND[Ó] QUE ESTE CONTINUARA DISFRUTANDO DEL MISMO, CON MONITOREO ELECTR[Ó]NICO.
>
> **SEGUNDO ERROR:** ERR[Ó] LA JLBP AL REVOCAR, POR EL EXPEDIENTE, EL PRIVILEGIO DEL QUE DISFRUTABA EL COMPARECIENTE, AUN CUANDO NI SIQUIERA SE DEMOSTR[Ó] LA PROBABILIDAD DE LA COMISI[Ó]N DE LA ACTIVIDAD DELICTIVA QUE A ESTE SE LE IMPUT[Ó] NI EL V[Í]NCULO DE [É]L CON LA MISMA.
>
> **TERCER ERROR:** ERR[Ó] LA JLB[P] AL UTILIZAR ERR[Ó]NEAMENTE CONCEPTOS DE DERECHO PROCESAL PENAL (VISTA PRELIMINAR Y VISTA PRELIMINAR EN ALZADA) Y CONFUNDIR LA CARGA PROBATORIA DE ESTOS – SCINTILLA DE PRUEBA- CON EL DE ABSOLUCI[Ó]N EN JUICIO PLENARIO CUANDO EN EL PRESENTE CASO EL PROCESAMIENTO PENAL CONTRA EL DELIBERADO NUNCA LLEG[Ó] A UN JUICIO EN SU FONDO.

En esencia, el recurrente precisó que, contrario a lo expresado por la JLBP, no era necesario presentar prueba adicional a las

---

[8] *Íd.*, Anejo 2, págs 7-8.
[9] *Íd.*, Anejo 3, págs 9-11.

resoluciones judiciales de no causa en vista preliminar para controvertir las imputaciones de poseer un arma de fuego y municiones. Asimismo, manifestó que desde el año 2020 disfrutaba de la libertad bajo palabra, el cual estaba cumpliendo satisfactoriamente bajo la supervisión del técnico de servicio sociopenal, quien recomendó la continuación del privilegio. El señor Avilés Burgos señaló que de la Vista Final de Revocación de Libertad Bajo Palabra no surgió la violación a las Condiciones nueve (9) y doce (12) del *Mandato de Libertad Bajo Palabra* ni se escuchó prueba sobre los hechos imputados en su contra. Sin embargo, adujo que la JLBP ignoró el significado y efecto jurídico de una determinación de no causa y encontró probados los hechos delictivos que se le imputaron en un ámbito jurídico en el que se requiere preponderancia de evidencia. Puntualizó que al Foro Primario no encontrar causa en la vista preliminar y en la vista preliminar en alzada, nunca se presentó una acusación en su contra, por lo que no se emitió una absolución.

Por su parte, el 6 de junio de 2025, la JLBP, representada por la Oficina del Procurador General de Puerto Rico (OPG), apuntó que en este caso administrativo, el resultado del procedimiento criminal no era relevante ni tenía el efecto de interferir con su facultad revocatoria. Planteó que la acción administrativa era independiente de la criminal, ya que persigue un propósito distinto y requiere una carga probatoria menor, siendo esta la preponderancia de la prueba. En específico, adujo que la revocación del privilegio de libertad bajo palabra no iba dirigida a castigar al recurrente por la falta criminal, sino a proteger a la comunidad mediante una investigación de las condiciones morales para determinar si puede continuar disfrutando el privilegio que le fuera concedido. Además, expresó que la determinaciones de no causa en el proceso criminal no borraron los hechos cometidos ni minimizaron su gravedad para fines administrativos.

De acuerdo con la OPG, quedó probado mediante preponderancia de la prueba, que el señor Avilés Burgos no observó buena conducta en la comunidad, no se abstuvo de cometer hechos o incurrir en omisiones que constituyeron delitos, violentando así las Condiciones nueve (9) y doce (12) del *Mandato de Libertad Bajo Palabra*. Subrayó que el recurrente no proveyó suficiente evidencia para derrotar el valor probatorio del Informe del técnico de servicio sociopenal, el cual formaba parte del expediente administrativo y contenía información sobre el allanamiento en su residencia y el hallazgo del rifle y las municiones. A su vez, manifestó que no proveyó información sobre las razones por las que no se le encontró causa.

## II.

### A. Revisión judicial

La revisión judicial permite que este Tribunal revise las decisiones, órdenes y resoluciones finales de un foro administrativo. Art. 4.006(c) de la *Ley de la Judicatura*, Ley Núm. 201-2003, según enmendada, 4 LPRA sec. 24y; Sec. 4.2 de la *Ley de Procedimiento Administrativo Uniforme*, Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9672 (LPAUG). Su objetivo es asegurar que el foro administrativo actúe dentro del poder delegado y la política legislativa. *OEG v. Martínez Giraud*, 210 DPR 79, 88 (2022); D. Fernández Quiñones, _Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme_, 3ra ed., Bogotá, Forum, 2013, pág. 669.

Los tribunales sostendremos las determinaciones de hechos de la agencia si se basan en la evidencia sustancial del expediente administrativo. Sec. 4.5 de la LPAUG, *supra*, sec. 9675. No obstante, revisaremos las conclusiones de derecho en todos sus aspectos. *Íd.*; *Vázquez y otro v. Con. Tit. Los Corales*, 2025 TSPR 56. En el pasado, nuestra revisión judicial se circunscribía a otorgar deferencia a la interpretación administrativa basado en su conocimiento especializado y determinar si la misma fue razonable. *Íd.*

No obstante, el Tribunal Supremo de Puerto Rico adoptó la interpretación federal en cuanto a que los tribunales debemos ejercer un juicio independiente al determinar si un foro administrativo actuó dentro del marco de sus facultades estatutarias. *Íd.*, véase, *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024). Ello, sin tener que otorgar deferencia a la interpretación que la agencia le confirió al derecho, sino guiados por los mecanismos interpretativos judiciales. *Íd.* Pues, a diferencia de las agencias, los tribunales tenemos mayor oportunidad de "[s]ituar estas controversias en un ámbito más amplio, donde la consideración decisiva tiene que ser el continuado mantenimiento de un vigoroso régimen de derecho en la comunidad, abonado por la indispensable fe pública en los procesos administrativos y judiciales". *Íd., citando a South Porto Rico Sugar Co. v. Junta Azucarera*, 82 DPR 847 (1961).

Por otro lado, las cuestiones mixtas de hechos y de derecho se considerarán como controversias de derecho, por lo que serán revisables en toda su extensión. *Super. Asphalt v. AFI y otro*, 206 DPR 803 (2021); *Rivera v. A&C Development Corp.*, 144 DPR 450 (1997).

### B. Privilegio de libertad bajo palabra

La JLBP es un foro administrativo con funciones cuasi-judiciales adscrito al DCR que se creó al amparo de *Ley de la Junta de Libertad Bajo Palabra*, Ley Núm.118 de Julio de 1974 según enmendada, 4 LPRA sec. 1501 *et seq.* Este organismo posee la autoridad de conceder el privilegio de que una persona que se encuentre recluida en una institución penal pueda cumplir la última parte de su condena en libertad bajo palabra. *Benítez Nieves v. ELA et al.*, 218 DPR 818 (2919). "Es importante señalar que el beneficio de la libertad bajo palabra no es un derecho reclamable, sino un privilegio, cuya concesión y administración recae en el tribunal o en la Junta de Libertad Bajo Palabra". *Quiles v. Del Valle*, 167 DPR 458 (2006); véase *Ruiz Matos v. Depto. Corrección*, 213 DPR 291 (2023).

El Artículo 3 de la *Ley de la Junta de Libertad Bajo Palabra, supra,* sec. 1503, dispone que la JLBP puede imponer las condiciones que considere aconsejables para la persona que quede en libertad bajo palabra, así como plasmar su compromiso de no incurrir en conducta delictiva y de no asociarse con personas reconocidas por su participación en actividades ilegales.

A su vez, "[e]n el uso de su discreción y tomando en cuenta la evaluación de la Administración de Corrección, tendrá facultad para revocar la libertad bajo palabra a cualquier liberado que, por su conducta, revele no estar aún preparado para beneficiarse plenamente del privilegio y el tratamiento que implica la libertad bajo palabra". *Íd.,* Tras ejecutar el proceso administrativo a tenor con los requisitos mínimos del debido proceso de ley dispuesto en el Artículo 5 de la *Ley de la Junta de Libertad Bajo Palabra, supra,* sec. 1505 y en la Sección 13.4 del Reglamento de la Junta de Libertad Bajo Palabra, Reglamento Núm. 9603 del 25 de septiembre de 2024, Departamento de Estado, la JLBA tomará una decisión sobre la revocación del privilegio a base de la preponderancia de la prueba, mediante un escrito que contendrá las determinaciones de hechos, la prueba y las razones que justificaron la revocación. Véase Sección 14.1-A del Reglamento de la Junta de Libertad Bajo Palabra, *supra.*

En tal proceso, la etapa de la revocación debe ser lo suficientemente flexible como para considerar evidencia que, de ordinario, sería inadmisible en un proceso criminal adversativo, tales como cartas y affidavit. *Martínez Torres v. Santos Amaro* 116 DPR 717 (1985), *citando a Morrisey v. Brewer,* 443 F.2d 942 (1971).

Por otro lado, es norma reiterada que los procedimientos administrativos son disímiles a los procedimientos penales, aun cuando sea por los mismos hechos. *Mundo v. Tribunal Superior,* 101 DPR 302 (1973). Es norma claramente establecida que el organismo cuasi-judicial tiene derecho a tomar sus propias decisiones

independientes, en base a la evidencia presentada. *Íd.* Pues, lo contrario, sería atar de manos y privarle de las prerrogativas que la ley le concede. *Íd.*; *San Vicente v. Policía de PR*, 142 DPR 1 (1996); *Cruz v. Garrido Morales*, 58 DPR 653 (1941). Al respecto, el Tribunal Supremo indicó que:

> **[P]or razón de los propósitos diferentes que persiguen, la determinación judicial de ausencia de responsabilidad penal no confiere *per se* ninguna inmunidad contra procedimientos disciplinarios profesionales o procedimientos disciplinarios administrativos instados por los mismos hechos que motivaron la acción penal, sin que importe que la referida determinación judicial haya sido una de archivo de una denuncia criminal, de no causa probable para arrestar o acusar, o de absolución luego de un juicio.** Ello es así no sólo porque todos estos distintos procedimientos aparejan diferentes grados de prueba sino, además, porque son procedimientos de naturaleza disímil, que persiguen objetivos concretos distintos. En particular, con respecto a lo que aquí nos concierne, unos hechos pueden no ser punibles desde la perspectiva penal por la falta, digamos del elemento de *mens rea* y aun así ser sancionables disciplinariamente [...] *Trib. Exam. Méd. v. Cañas Rivas*, 154 DPR 29 (2001) (Énfasis nuestro).

En tal sentido, la determinación judicial no es vinculante para la esfera administrativa, máxime cuando se desconocen las razones que motivaron la decisión de no hallar causa. *Íd.*

### III.

En el presente caso, el señor Avilés Burgos señaló que la JLBP cometió tres (3) errores que discutiremos en conjunto por su intrínseca relación. Arguyó que el organismo administrativo incidió al revocar su privilegio de libertad bajo palabra, aun cuando no se demostró la probabilidad de la comisión de la actividad delictiva que se le imputó y su técnico de servicio sociopenal recomendó la continuación del beneficio. A su vez, planteó que la recurrida erró al confundir la carga probatoria penal con la administrativa.

Tras un análisis sosegado del expediente ante nuestra consideración, concluimos que la JLBP no cometió los errores aducidos por el recurrente.

Si bien el TPI no encontró causa para juicio contra el señor Avilés Burgos por los delitos imputados tanto en la vista preliminar

como en la vista preliminar en alzada, tal determinación no impidió que la JLBP ejerciera su facultad de revocar el privilegio de libertad bajo palabra al encontrar por preponderancia de la prueba que cometió violaciones al *Mandato de Libertad Bajo Palabra.* Del *Informe de Violación de Condiciones* preparado por el técnico de servicio sociopenal surgió que, al realizar un allanamiento a la residencia del señor Avilés Burgos, la Policía de Puerto Rico encontró un arma de fuego y ciento diecinueve (119) municiones, sin poseer una licencia de armas.

Tal hallazgo, que formó parte del expediente administrativo, constituyó una clara infracción a las Condiciones nueve (9) y doce (12) del *Mandato de Libertad Bajo Palabra.* Es evidente que el recurrente no tenía autorización para poseer tales artefactos por estar disfrutando del privilegio que le concedió el organismo administrativo desde el año 2020. Asimismo, tal como determinó la JLBP, los hallazgos de la Policía de Puerto Rico no se podían considerar aisladamente, ya que los delitos por los que el señor Avilés Colón se encontraba cumpliendo sentencia estaban relacionados con la *Ley de Armas, supra.* Pues, la libertad condicionada del recurrente estaba supeditada a no cometer delitos ni actos incompatibles con el bienestar público, familiar y personal. Por ello, la presencia del arma de fuego y las municiones en su residencia constituyeron motivo suficiente para que la JLBP revocara su privilegio.

Dicha determinación administrativa era completamente independiente de la decisión de inexistencia de causa, aun cuando se tratara por los mismos hechos. El procedimiento penal perseguía un propósito y tenía una carga de prueba mayor y totalmente distinta al de la JLBP, organismo administrativo responsable por ley de conceder, supervisar y revocar el privilegio de libertad bajo palabra a las personas coartadas de libertad. Además, del expediente no surgió

que el recurrente aportó evidencia sobre la razón por la que el Foro Primario no encontró causa para juicio.

Cónsono con lo anterior, la JLBP actuó razonablemente al determinar por preponderancia de prueba, a la luz de la prueba presentada durante la vista y la totalidad del expediente del caso, que debía revocarle el privilegio de libertad bajo palabra al señor Avilés Burgos por incumplir el *Mandato de Libertad Bajo Palabra.*

## IV.

Por los fundamentos que anteceden, se confirma la *Resolución* recurrida.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones